UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80177-CR-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA

v.

WILLIAM KENNETH STEWART,

        Defendant
_____/

## PLEA AGREEMENT

The United States of America and WILLIAM KENNETH STEWART (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count Two of the Indictment, which charges the defendant with receipt of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2) and (b)(1).

2. The United States Attorney's Office agrees to seek dismissal of Count One of the Indictment, distribution of child pornography, after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in

WKS

part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed. The defendant is also aware that the guidelines do not provide for parole.

   4.   The defendant also understands and acknowledges that the Court must impose a minimum of five (5) years imprisonment up to a statutory maximum term of twenty (20) years imprisonment, followed by at least five (5) years of supervised release up to a lifetime of supervised release. In addition to a term of imprisonment and

supervised release, the Court may impose a fine of up to $250,000 dollars, and <u>full restitution</u>.

5. Defendant agrees to abandon to the Boynton Beach Police Department voluntarily and immediately all of his right, title and interest to the following assets which are currently in the possession and control of the Boynton Beach Police Department:

a) Dell desktop computer, s/n TH-OG5594-17971-45L-OHZ2;
b) Pionex desktop computer, s/n 7001586836;
c) HNH BG45-AP53;
d) Seagate 160 HD s/n 5JS1GQFM;
e) Seagate 160 HD s/n 5JS1GRES;
f) Sony Digital Camera s/n 41467;
g) 28 miscellaneous cds;
h) Sandisk 2GB flashdrive;
i) Sandisk Cruzer 10 GB;
j) HP Smart Server s/n FL700AAAABA;
k) Dell tower s/n 00188-020-488-484;
l) miscellaneous cables;
m) flash drive 8 GB;
n) Maxtor HD s/n CC101A7U;
o) Maxtor HD s/n CC500PRU;
p) Maxtor HD s/n CC5012MU;
q) Western Digital HD s/n WCASU3200383
r) Dell tower s/n 22Y6L11;

 s) Dell tower s/n 00144-446-818-199;

 t) Samsung monitor s/n TW24HVNQ802200R;

 u) Samsung monitor s/n TW24HVMS100475P

6. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

7. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the

4

defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources efficiently.  The United States, however, will not be required to make this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9.   The defendant understands that if he violates any provision of this agreement, or if his guilty plea is vacated or withdrawn, the government will be free from any obligations of the agreement and free to prosecute the defendant for all offenses of which it has knowledge.  In such event, the defendant waives any objections based upon delay in prosecution.

10. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

11. The defendant acknowledges that he has fully discussed the matters of this plea agreement and his guilty plea pursuant thereto with his attorney, and that his attorney has answered each of his questions about the strength of the government's case as well as the following rights: to go to trial, to cross-examine the government's witnesses, to testify in his own behalf, to not be compelled to provide self-incriminating testimony, to call witnesses for the defense, and to appeal any adverse verdict that

may result from a trial. The defendant further acknowledges that he is fully satisfied with the representations provided by his attorney.

12. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 3/8/12   By: _____
RINKU TRIBUIANI
ASSISTANT UNITED STATES ATTORNEY

Date: 3/7/12   By: _____
DEAN WILLBUR, JR.
ATTORNEY FOR DEFENDANT

Date: 3/7/12   By: _____
WILLIAM KENNETH STEWART
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80177-CR-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA

v.

WILLIAM KENNETH STEWART,

             Defendant
_____/

## FACTUAL BASIS FOR CHANGE OF PLEA

On July 11, 2011, at 1:30 p.m., in Palm Beach County, in the Southern District of Florida, Boynton Beach Detective Charlie Ramos was working in an undercover capacity online looking for people who were distributing child pornography. Ramos queried the Boynton Beach Police Department Child Protection System database and found an Internet Protocol address that had been logged into for several months. This IP address was sharing child pornography.

Ramos used publicly available websites to find the owner of IP address 99.10.211.46. Ramos discovered that the IP address was owned by AT&T Internet Services. Over the next few weeks, July 11, 2011 to September 03, 2011, Ramos used an undercover investigative software program on the "E Donkey" file sharing network via the internet to download child pornography files from IP address 99.10.211.46.

Ramos downloaded four (4) video files from IP address 99.10.211.46. The following child pornography images and videos were downloaded by Ramos from the defendant's computer:

**File name "Preteen- Pedo Vicky & Danie.mpg"** described as follows: this is a video of a prepubescent girl approximately 11 years old that undresses to be fully naked with her vagina showing. The child walks to an adult male that is standing next to her and unzips his pants and removes his penis from his pants. The child is then directed to place the penis in her mouth and starts to suck on the penis.

**File name "Kimmy (((kingpass))) Newest – st. petersburg02 g12 Nd.avi"** described as follows: A female child under the age of 14 standing fully naked. The child sits on the floor naked as the camera zooms in on her vagina. The child is told to spread her legs and then her vagina. The child then stands up and turns around and bends over to show her rectum.

**File name "pthc – webcam – 9yo Tiffany.mpg"** described as follows: A prepubescent female child under the age of 10 sitting in a computer chair. The child pulls her pants down in front of a computer web camera and exposes her vagina. The child then begins to spread her legs and vagina

WKS

apart in front of the camera. The child begins to rub her vagina in front of the camera.

**File name "(Pthc))liluplanet)(lordofthering) mod 26 –secret cam.avi"** described as follows: an female of an unknown age lies on a bed fully naked as she rubs her vagina. Her breast development appears small but it cannot be determined, based upon your Affiant's training and experience that the female is under the age of 18. It appears that there is a hidden camera in the room video recording her.

The first three videos are each considered child pornography pursuant to Title 18, United States Code, Section 2256.

Ramos sent a subpoena to AT&T Internet services for subscriber information on the person using IP address 99.10.211.46 from June 1, 2011 to September 6, 2011.

On September 8, 2011, Ramos received a response from AT&T Internet Services stating that IP 99.10.211.46 was assigned to customer Ken Stewart, 1401 Apartment 1522 Village Blvd., West Palm Beach, FL 33470.

On September 08, 2011, Ramos obtained a State of Florida search warrant from Judge Sheree Cunningham, Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

On September 08, 2011 at 8:30 p.m., Ramos executed the search warrant at 1401 Village Blvd., Apartment 1522, West Palm Beach, Florida.

Upon entry inside the home, Ramos found defendant William Kenneth Stewart home alone. In the living room area, Ramos saw two computers that were powered on and running. On the computer screens Ramos saw child pornography videos that were being downloaded by a peer to peer program running on Stewart's computers. Stewart was actually downloading child pornography as the search warrant was being executed.

Ramos read Stewart his *Miranda* rights and Stewart agreed to give a statement. Ramos took a tape recorded statement from Stewart. Stewart stated that he lives alone and that he has lived in his apartment for 4 to 5 years. Stewart stated that he has two working computers in the living room area. Stewart stated that his computers are password protected and that he is the only person who knows the passwords. Ramos told Stewart that Ramos saw his computer running a peer to peer program and he stated, "I guess so." Stewart stated that he was a chief engineer and that he has a Ph.D. Ramos handed Stewart a copy of the search warrant and asked him about the child pornography on his computer. Stewart then invoked his right to an attorney. Ramos terminated the interview.

Det. Mammarella, a computer forensic examiner with the Boca Raton Police Department, conducted a forensic preview of Stewart's external hard drives. The parties agree that the Defendant possessed in excess of 1,000 images depicting child pornography. These images include depictions of young children approximately 4-7 years old engaged in sadistic and masochistic acts. At sentencing, the Government will present evidence that the Defendant possessed tens of thousands of images depicting child pornography.

Based on his computer forensic examination to date, Det. Mammarella found files downloaded

by Stewart as early as January 16, 2000.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 3/8/12     By: _____
                      RINKU TRIBUIANI
                      ASSISTANT UNITED STATES ATTORNEY

Date: 3/7/12     By: _____
                      DEAN WILLBUR, JR.
                      ATTORNEY FOR DEFENDANT

Date: 3/7/12     By: _____
                      WILLIAM KENNETH STEWART
                      DEFENDANT