## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 11-80177-CR-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA,

vs.

WILLIAM KENNETH STEWART,

     Defendants.

_____/

## NOTICE OF FILING LETTERS IN SUPPORT OF SENTENCE TO BE REQUESTED

**COMES NOW** the Defendant, WILLIAM KENNETH STEWART, by and through his undersigned counsel, and hereby gives notice that he is filing the attached letters in support of the sentence which he will be requesting. Sentencing is scheduled for September 13, 2012.

**WHEREFORE,** the Defendant, WILLIAM KENNETH STEWART, respectfully requests this Court to consider the attached letters at time of sentencing.

    Dated: September 5, 2012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 5, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel fo record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF. or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                         **DEAN L. WILLBUR, JR., P.A.**
                         Attorney for Defendant
                         11380 Prosperity Farms Road, Suite 110A
                         Palm Beach Gardens, Florida 33410
                         (561) 775-7577 Telephone
                         (561) 775-8779 Fax
                         Dean@deanlwlaw.com

    BY: /S/ DEAN L. WILLBUR, JR.
              DEAN L. WILLBUR, JR.
              FLORIDA BAR NUMBER: 286222

## SERVICE LIST

United States of America v. William Kenneth Stewart
Case NO. 11-8354-LRJ
United States District Court, Southern District of Florida

**Rinku Tribuiani**
Assistant United States Attorney
500 Australian Avenue, Suite 400
West Palm Beach, Florida 33401
(561) 820-8711
Method of Service: CM/ECF

rinku.tribuiani@usdoj.gov

**Dean L. Willbur, Jr.**
Dean L. Willbur, Jr., P.A.
11380 Prosperity Farms Road, Suite 110A
Palm Beach Gardens, Florida 33410
(561) 775-7577
Method of Service: CM/ECF
Dean@deanlwlaw.com

USPO Sheila A. Parsons
U.S. Probation Officer
501 South Flagler Drive, Suite 400
West Palm Beach, Florida 33401
Phone: (561) 804-6853
Served through CM/EMF
sheila_parsons@flsp.courts.gov

## LIST OF LETTERS

Hali Tauxe-Stewart

Victoria K. Tauxe

Kathy D. Stewart, PhD

Jean F. Stewart

Karyl Stewart

Kelli M. Stewart

Kendon T. Barretta

Kerry S. Barretta

Hali Tauxe-Stewart
1505 Wekewa Nene
Tallahassee Florida 32301

August 21, 2012

Honorable Kenneth Ryskamp
Federal Courthhouse
701 Clematis Street
West Palm Beach, Florida 33401

Re: United States of America vs. William Kenneth 'Ken' Stewart
Case No. 11-80177CR Ryskamp/ Hopkins

Dear Judge Ryskamp,

I'm writing on behalf of my father, Ken Stewart, a man of great honesty and intelligence and one for whom I have a great deal of love and respect –in spite of his crime. I feel that it is a shame that you should meet him for the first time under the present circumstances. Upon hearing the charge of receiving child pornography it is all too easy for one to draw their own conclusions about the character of the perpetrator, but I implore you to use the evidence we present to paint a more accurate picture of who he is.

In these first seventeen years of my life, my dad has always made an effort to be there even from far away. I've gotten to know him better than I might have and I've always considered myself lucky to have a dad that was so caring, dependable, and upstanding. He was especially good to me as a young child. I loved my visits to daddy's, and even though they were sometimes far between he never missed a beat. I believe he was a natural father, he had an easy way with kids and they adored him. He was a gentle giant –never threatening. I never felt infringed upon by him in any way.

For these reasons and more, I was shocked and deeply saddened when I learned the charges facing my father. This is a grave crime in and of itself, but the best consolation I had was the understanding that while he viewed the images on his computer, there is a difference between fantasy and actual child contact. Knowing him the way I do, it's impossible to imagine that he would ever directly hurt anyone with intent, and I don't believe he represents any kind of risk to the community. He has pled guilty to the charge of receiving child pornography, and his remorse is undeniable. For this,I know that he will dutifully serve his time. As his daughter, I can only ask you to consider the

shortest time of incarceration possible, so that he may get back to his role in serving the community, and use his remaining time to make reparations with the people who have come to know and love him.

I appreciate the gravity of your decision, and I thank you for the time you've set aside, and for your consideration of my request.

Sincerely,
Hali
Hali Tauxe-Stewart

*Victoria K. Tauxe*
*1505 Wekewa Nene*
*Tallahassee, Florida 32301*

August 24, 2012

Honorable Kenneth Ryskamp
Federal Courthouse
701 Clematis Street
West Palm Beach, Florida 33401

> RE: United State of America vs. William Kenneth 'Ken' Stewart
> Case No. 11-80177CR  Ryskamp/Hopkins

Dear Judge Ryskamp,

I met Ken in college 1978 at FAU, Boca Raton, and in the last 34 years, I have
known him as a friend, a boyfriend, that scientist-guy I know at Woods Hole, a re-
connection, a husband, the father of our daughter, my ex,  and, full-circle, as a
friend again.  You could say that I have known Ken through good times and bad,
and we have both loved and hurt each other.  Sadly, Ken is coming before you
soon to be sentenced for the charges of Receipt of Child Pornography, to which he
has entered a plea of guilty.

It is very difficult to associate this crime with Ken, who I know as conscientious
and gentle.  I know that he is deeply shamed by his actions and the pain it has
caused everyone.  As embarrassed as he was, he called me immediately to ensure
me that the porn was just fantasy, and he'd never had any contact or untoward
actions with children, including our daughter – and I believe him.  I've watched
him over the years in many situations with kids and teens.  Children are
comfortable and at ease with him, in large measure because he is not pushy, showy
or touchy.  His manner is bemused not absorbed; his interactions comic-quaint,
not charismatic or enchanting.  Also, Hali, our 17 year old daughter, told me she
remembered no incidence or *feeling* of personal infringement.

My marriage to Ken was short (Hali was 2 when we separated), and the divorce
somewhat contentious.  We were both resentful for years.  Regardless of those raw
feelings, Ken was a kind and respectful father.  He unfailingly complied with every
custody and support article of the agreements we negotiated.  I tell you this
because I believe it is a testament, that although he felt wronged by the divorce
decree, he behaved in accordance with it and with deference to the benefit of Hali.
In more recent years, the bitterness passed, and both Hali and I have shared
friendly times with Ken.  That is why this charge is so shocking, incongruous and
sad for us.

Ken clearly regrets and accepts responsibility for what he has done, and the punishment that is your grave responsibility to administer. I only ask that you consider Ken as a person, not a statistic or a label. He made serious mistakes, and his actions have indirectly caused harm to himself, his family and society. Having this out in public with the repercussions and indignities that followed have already caused devastating personal loss and pain for him, all the more grievous because of the suffering it has caused his family. As the record shows, Ken has a doctorate degree in engineering, and took pride in his prestigious career, first in science and exploration, then in public service. He is typically modest and judicious in behavior, and was compliant and respectful of the divorce decree, even under duress. Most importantly, he is still the father of a daughter who has high school graduation, college, marriage and family ahead of her, along with the pain of having to say her Dad can't be there.

I don't believe that Ken would ever commit another offence or violate any prescribed supervision or treatment you deem prudent, and further, that a long incarceration is unnecessary to protect the public. Despite the hype, vilification and connection promoted in media and politics, I believe (as is supported by research) that receiving and viewing obscenity is very different from perpetrating it. They are behaviorally and emotionally separate crimes. That is *not* to say that it is a victimless crime - we all recognize that – just that he did not *directly* hurt anyone. Personally, I have been shocked at the suggested sentences for this crime, relative to many crimes of directly violence. I ask that the Court sentence Dr. Ken Stewart to the minimal incarceration possible and allow him the opportunity to redeem himself to his family and society. Ken could use his considerable intelligence and abilities in service of the public rather than a drain upon it.

Thank you for your consideration of my request, and for your service.

Sincerely,

Victoria K. Tauxe

Kathy D. Stewart, PhD
640 Douglas Avenue
Winter Park, FL 32789

August 27, 2012

Honorable Kenneth Ryskamp
Federal Courthouse
701 Clematis Street
West Palm Beach, FL 33401

Re:  United State of America vs. William Kenneth  Stewart,  Case No. 11-80177CR Ryskamp/Hopkins

Dear Judge Ryskamp,

My brother Ken is guilty of receipt/possession of child pornography.  He has pled guilty and will
have been in jail for a year by the time he appears in your courtroom for sentencing.  Before his
arrest and detention, he was a contributing member of society—benefitting the state of Florida
directly through his work with the South Florida Water Management District, paying taxes, helping
to support his daughter, helping us (his sisters) with our mother, and generally leading a quiet life,
without intentionally causing harm.  But he *was* causing harm—and he was breaking the law by
receiving/possessing child pornography.

Like other members of our family, I was shocked to learn of his arrest and especially shocked by the
charges.  We are all pretty much law-abiding, responsible, considerate, "don't make waves" people,
and child pornography is wave-making on a large scale.  I love and admire my brother, and I'm
deeply saddened by the wreckage resulting from his actions—his deep pain because of the grief he
has caused others; public shaming and even vilification; the loss of his freedom, livelihood, and
savings; and the casting of an ugly permanent shadow over both his own life and his daughter's.

Child pornography is such an emotionally-charged issue and so entwined with child abuse that
people recoil in disgust or react with hostility and even aggression. Fear for the safety of children
and sorrow for those harmed seem to be only parts of the reason this topic is so highly charged.
Because of strong emotions, I don't think the facts of Ken's particular case are going to matter to
most people, but I trust they will matter to you, in your courtroom.

This is my brother Ken:
- Very bright, educated, and professionally accomplished.
- Both work-focused and inward-focused—like I am—to a degree that negatively impacts
  personal relationships.
- Quiet, gentle, self-sufficient, and comfortable with solitude.
- Articulate, pleasant, and witty but with less desire or need for social contact than most
  people.  He's more of a loner—which is also true of me but not to the same degree.

1

- A good father—responsible, patient, teaching, guiding, encouraging, and astute—in spite of flaws.

This is also my brother Ken—intensely private, lonely, fixated on an earlier time in his life, and perhaps too isolated (until his arrest) to fully realize the ramifications of his law-breaking path. To the extent of my knowledge, sizable at this point, Ken's computer-related activities—in his home, by himself—represent the extent of his involvement with child exploitation of any kind. Ken has acknowledged responsibility for his actions. He has laid bare to the court his life history—with an honesty and dignity I don't think I could match. As another intensively private person, even the thought of standing up, as he has, to what he's done is painful for me to contemplate.

It seems almost oxymoronic to me to say that Ken tried to be "responsible" in his law breaking, but it's nonetheless true. He did not add new child pornography to the thousands or millions of files already on the internet. He did not seek to expand the availability of those files. He did not seek community with others who view/download child pornography or with those who produce or sell it.

Although the law distinguishes between receiving/possessing child pornography and other offenses such as producing/selling it or molesting or attempting to molest children, the consequences and penalties associated with each seem convoluted to me and not proportionately correlated with the severity of the offense. The shock of Ken's arrest was followed by a series of shocks: the conditions of pre-trial release set by the state of Florida; the almost immediate federal intervention and denial of pre-trial release; learning of the severity of sentencing guidelines for receiving/possessing child pornography; and the *apparent* requirement to defend himself against charges *not* made for crimes he definitely did not commit and was/is in no danger of committing.

Many times during the past year, I've tried to help our 85-year-old mother understand the law associated with Ken's crime. She is offended by all pornography—regardless of the ages of the people depicted—but she is also incredulous that "looking at pictures" merits such severe punishment. I can't fully explain it to her, not on the basis of reason. These laws, and similar state laws, capture in their nets a variety of offenders: teenagers being teenagers with repercussions that are much greater now because of the power of the internet; child molesters—some of whom are pedophiles, some of whom aren't; would-be molesters; exploiters who seek material gain; and people like my brother Ken who would have been better served, and served society better, by therapeutic intervention rather than by staying on a collision course with the criminal justice system.

Ken did collide with the criminal justice system, so here we are. As I understand it, if there's going to be justice in this case, for society and for Ken, it's in your hands to administer it. I think that will be a difficult task, especially during this phase in the evolution of sentencing related to receipt and/or possession of child pornography. It's very hard to contemplate that my brother Ken—who is neither accused nor guilty of molesting, abusing, or in any way behaving inappropriately with a child—can receive a more severe sentence for receipt/possession of child pornography than other individuals have received for child molestation and other forms of violence against a child . . .or for that matter, against an adult. I don't see the justice in that.

2

In his *Divine Comedy*, Dante Alighieri conceived of nine circles of Hell, with the 7th circle reserved for perpetrators of violence against people or property and the 9th circle, with the severest form of punishment, reserved for traitors. The point is degrees or levels of severity and culpability—a concept that is part of the foundation of our criminal justice system but seems out of kilter in receipt/possession cases.

Ken possessed computer-based visual images that were illegal to possess. That's his crime. However horrible some of these images might be, he did not steal them, buy them, make them or participate in the making of them. He did not use them, nor seek to use them, for any illicit purposes. He would belong in Alighieri's 2nd circle, because he acted on sexual *thoughts* by downloading visual *images.* In contrast, the recent high-profile case involving multiple instances of a man sexually assaulting boys represents an 8th circle offense. The violent aspects would have put the man in the 7th circle, but the abuse of trust—the enticing and manipulating of children for illicit purposes—moves the perpetrator even deeper into Hell.

Our laws make it illegal to possess various kinds of images or documents, including, for example, unauthorized possession of classified national defense material. In a recent federal case, a contractor, whose true identity still isn't known and who not only stole classified documents but clearly intended to use them for illicit purposes, was sentenced to nine years—nine years for a 9th circle offense. In a 2007 case, a military officer, who, among other violations, also illegally possessed classified national defense material, was sentenced to 10 years, dismissal from the Army, and forfeiture of military retirement—again, 9th circle.

I hope it counts for something that Ken has no criminal record, is not a violent offender, told the truth, played a *comparatively* minor but nonetheless criminal role in the sexual exploitation of children that our country is attempting to stop, is not a danger to children or adults, and is extremely unlikely to reoffend in any way.

Sincerely,

Kathy D. Stewart

Kathy D. Stewart

Jean F. Stewart
108 View Street # 1
Black Mountain, NC 28711

August 27, 2012

Honorable Kenneth Ryskamp
Federal Courthouse
701 Clematis Street
West Palm Beach, FL 33401

Re: United States of America vs. William Kenneth Stewart
    Case No. 11-80177CR RYSKAMP/HOPKINS

Dear Judge Ryskamp,

Dr. William Kenneth Stewart, Jr. is the oldest child and only son in our immediate family and a
brother to four sisters. He was named after his father (deceased) and we were (and I am) very proud of
Ken, Jr.

Ken was a bright little boy and was very sweet and he and his sisters as well, were a tremendous
blessing to his parents and extended family. We went to great lengths to help him get a superb education,
attend church, and to work and study hard to achieve education and work ethics exemplified by both sides
of the family. He has always been advanced in learning, thoughtful, honest, generous and exceptional in
many ways.

Living in the Bahamas and attending a small, private school, he was selected to move into a bright
class with children as old as 11 when he was six years old. The two teachers and later other excellent
professors continued to move him up. He was again moved up from the third grade to the fourth grade
after we moved back to the States. I tried to have him stay with schoolmates his age, knowing how
children can be in classes with much older classmates. I discussed the situation with the school Principal
who stated that he could not in good conscience place our bright son in the lower grade. This continued
throughout his school years and in his senior year, after being in a private school for two years, he was
second in a graduating class only to a student who had attended the school for all 12 years of prep school.

Ken won a fellowship program to gain his doctorate at MIT where he entered a program working in
conjunction with Woods Hole Oceanographic Institution developing underwater research technology. He
achieved his doctorate and also won large sums for the university. This was perhaps one of his highest
recognitions. He also won a grant which gave him, the school and the Titanic research crew $600,000, I
believe, for equipment which was used for the trip down to the Titanic. He was one of the twelve
scientists that first went down to the Titanic.

Our son is extremely talented in many ways, is modest about his achievements, is extremely honest, and is thoughtful and helpful to his family and friends. He uses his engineering skills to check all of our family members' electronic equipment when he visits. A few years ago, he surprised me by installing a new computer for me while his sister and daughter took me out for a drive. He spent hours inputting all of my contacts so that I could stay in touch via email with my family and friends. This ability to communicate regularly is very important to me and using the computer to do so is part of my daily routine.

Ken has also been very generous in contributing regularly to my monthly financial needs due to my very limited income now that I am older, even sharing with his sisters in purchasing a used car for me when my previous car became unusable.

The accusation last year and his arrest were shocking to our family and to have him in the plight he is in is heartbreaking to me. I, his mother, am grieving that my only son, of whom I have been so proud, is in the situation he is in. He has always been so capable, thoughtful of others, and dedicated to his family, employers and friends.

My son is the father of a lovely daughter, and although separated geographically, has not neglected her. He and his former wife are on good terms and both spend pleasant times with their daughter, often the three of them together.

Although my son is highly intelligent, he has apparently admitted to wrongdoing, regrets what he did and wants to go forward with is life. I support and encourage that. He has a doctorate in Ocean Engineering, has worked steadily since he graduated from high school at 16, and can still offer a positive contribution to society.

I am prepared to help in any way that I can and have no hesitation to seeing him released. I have no fear of his being returned to the community or that he would be involved further with this charge. He has served over a year, lost his job, lost his home and furnishings, and lost time with his daughter and family. He understands that he has done wrong and that he will pay a price for this mistake for the rest of his life, even after release from confinement.

Although sad that my remarkable son is now separated from our family, all of us are willing to help him restore his life and get past the bad judgment he has been accused of. I understand that his actions did not include child contact; and I ask that the judge realize that he is not a threat to anyone. I believe he is ready and willing to make up for his mistakes. We hope and pray that the time he has served will be sufficient so that he can be released soon to compensate for his mistakes and return to his family and try to find gainful employment.

Thank you for considering my thoughts and request,

Jean F. Stewart
Mother

Karyl Stewart
3478 Old Pond Road
Johns Island, SC 29455

August 25, 2012

Honorable Kenneth Ryskamp
Federal Courthouse
701 Clematis Street
West Palm Beach, Florida 33401

This case is: United States of America vs. William Kenneth Stewart
The case number is: 11-80177CR RYSKAMP/HOPKINS

Dear Judge Ryskamp:

I am one of William Kenneth (Ken) Stewart's sisters. I was deeply saddened and am still grieving because Ken has been charged with and admitted to receipt/possession of child pornography. I grieved to learn that he had made such a serious mistake in judgment and character, because his actions changed his life, his daughter's life and all of our family life forever. I cannot pretend to understand this behavior, ever, and do support the system's punishment on a case by case basis, so that the person's life and record and contributions to society and family can be considered.

I am asking your consideration in evaluating leniency in Ken's sentence. As his sister, I can tell you that he is a good, honest, and trustworthy individual, who has given a lot, offered a lot and still has so much give. He was a fun brother growing up with 4 "annoying" sisters. He has had a career that we take pride in, including earning his doctorate in Oceanographic Engineering at MIT, his work at the Woods Hole Institute, the Jason Project, and his participation in the discovery of the Titanic. Obviously we took great pride in claiming our own Scientist-"Discoverer." In his teens, he volunteered to join the Navy's Construction force as a member of the Seabees. He traveled on his own to the Yucatan Peninsula and while there repaired a village well/water system for the villagers and was recently the Chief Scientist at South Florida Water Management.

After successes in his career, he provided us with one of the most loving, smart and wonderful nieces we could hope for. She will turn 18 in September. Ken made a point to share his daughter with all of her aunts and family. Not only did he provide her opportunities for love, travel and learning, he has jointly provided for her financially.

In addition to supporting his daughter financially, he has been a crucial provider for our mother and deceased father. We worry that our mother will pass on too, without the chance to see her son again, as she is 85 years old.

We know that receipt/possession of child pornography materials from the internet is wrong in every way, but all of us would support his release and whatever rehabilitation and community services he would be sentenced to complete. I can assure you that each of us, his four sisters, and all of our able family including his daughter and former wife, would do whatever it took to help him in his release, including volunteering with Ken to advocate and help with victims of these crimes, and to educate the public on child pornography issues in whatever we could do to raise awareness tenfold. It is a very sad situation for us all. Ken is a brilliant man who has made a

August 25, 2012
Page 2

mistake. His daughter still loves and needs him, as we all do. While everyone understands the need to protect the public, there are certainly adequate means through supervision, counseling and support of his family to insure the public safety. It would seem to be a waste of an important and valuable life by sentencing Ken to long-term imprisonment. He has so much to give in providing education to the public, and offering his scientific and technological skills. Please consider a fair and reasonable sentence so that we, his family, can support him with conditions in any way you decide. We want him in our lives again. He has already lost a year of time with no chance of saying goodbye to his daughter, his mother or any of us . . . and with not so much as the ability to see to his brother-in-law Jim, who passed away in June.

I appreciate your consideration and thought in reviewing my correspondence, and if there is anything I can do to assist the Court, please contact me at your convenience.

Sincerely,

Karyl L. Stewart

Karyl L. Stewart
Email: klstewart1014@comcast.net
Cell Phone: 270-205-0234

Kelli M. Stewart
123 Wyckfield Rd.
Savannah, GA 31410

August 29, 2012

Honorable Kenneth Ryskamp
Federal Courthouse
701 Clematis Street
West Palm Beach, Florida 3340

Re: United State of America vs. William Kenneth Stewart, Case No. 11-80177CR Ryskamp/Hopkins

Dear Judge Ryskamp,

Although I am deeply saddened by the circumstances which prompt me to write this letter, it is nonetheless an honor and privilege to speak to you about my brother, Dr. William Kenneth Stewart, who will come before you for sentencing in the coming weeks. I am grateful for the opportunity to communicate with the court and I thank you personally for your attention and consideration of what I have to say. This is not an easy letter to write, Your Honor, both because of personal circumstances relating to the very recent death of my husband, and the seemingly daunting if not impossible task of providing in a single correspondence, concise yet adequate insight into the character and life of a man I have loved and respected for nearly 54 years. Yet, I feel a huge responsibility to do so, not just for the benefit of my brother and my family, but to also benefit the court by providing you with honest and first-hand information, which I fully expect will contribute to the overall ability to make an informed decision regarding my brother's sentencing.

To say that I was shocked to learn that my brother had been arrested and charged with receipt and possession of child pornography would be a comically gross understatement— it was a life shattering moment. I received the news on a day when my husband and I were enjoying a rare afternoon at home considering our unrelenting schedule of hospital stays, doctors' appointments, treatments, tests and surgeries that my husband bravely underwent in his nearly 2 year battle with pancreas cancer. Facing and accepting the eventuality of my husband's death was profoundly difficult in and of itself. And in the midst of that, to then learn that a member of my immediate family had even the slightest connection to child pornography seemed entirely too much for my mind to grasp and my heart to bear.

Like many people who hear the term "child pornography," I initially reacted with hasty judgment, disgust and incorrect supposition as to what other abhorrent behavior there might have been, although in fact, there was none. In a split second, I circumvented half a century's worth of knowledge and evidence of my brother's character, while the feelings of love and trust I had for him were challenged to their very foundation. I felt betrayed and confused and most of all conflicted that this wonderful, brilliant and loving human being was not at all who I thought he was. And yet I could not resolve within my own mind how that could be.

I am the baby of the family and my brother, Ken, the oldest of five, is 8 years my senior. From the beginning I looked up to him as probably any baby sister would—Ken, or Kenny as we called him then, was my big brother, my protector, and taking into account our age difference, really only occasionally a playmate, and rarely a playful yet mischievous antagonist. I always thought my brother was a pretty cool

guy but it wasn't until I reached college age that I began to truly understand and admire his character, his intelligence and his contributions.

In the late 1970's I followed after him to a small technical college in North Carolina where his quiet but witty personality and super brain-power blazed a trail through a Marine Technology degree program, leaving an indelible mark on his classmates, and subsequently me, as well as some of the same faculty members that we studied under –the latter being both a blessing and a curse, I might add. Initially I recall feeling a bit like a celebrity being received with such candor and marvel as I was introduced as "Ken Stewart's sister," which became my moniker for the first six months or so. In time, however, they did learn my first name not coincidentally I'm sure, when they began to realize that sharing the same gene pool with Ken Stewart did not necessarily mean equal distribution or application of intelligence. Still, Your Honor, I did just fine and my education there provided me with unique insight into my brother's early academic achievements that, given his quiet and private nature, neither you nor I would have ever known.

As has been the case throughout his life, Ken was genuinely well liked and greatly respected by both his friends, some of whom became my friends, and his teachers. One professor boasted of Ken's invaluable help in installing for the school a new computer system which in those days was so big that it demanded the dedicated space of an entire room. A biology professor confessed to me that he intermittently inserted what he called "trick questions" into test material in efforts to challenge and fool my brother— something he admitted he never could do.

Ken went on to earn other scientific degrees including a doctorate from MIT. His work for the US Navy's deep sea submersible program (AMUVS) at Woods Hole Oceanographic Institute was invaluable as were his contributions to voice recognition software which he advanced during its relative infancy. He was a scientific crew member on many intriguing and historic expeditions which, among others, include the discovery of new marine species off the coast of Baja and exploration of the Titanic, subsequent to its discovery. Part of earning my degree in Marine Technology required numerous trips to sea on a research vessel. Having had this hands-on experience, I was particularly impressed by a computer model that my brother worked on, which involved the interpolation of sonar data for mapping the ocean floor in real time. Prior to his contributions, and others I'm sure, the process of analyzing sonar data took days to complete.

There are many other achievements in Ken's professional life including most recently the installation and operation of a water management system for the State of Florida. To say that he has contributed to society is an understatement. His intelligence and dedication to his field, has benefitted not just our society, but our world. The tragic circumstances which currently prevent him from continuing to excel in his field, do not, however, diminish the potential for future contributions by this gifted scientist.

Although it might seem cliché, perhaps Ken's greatest achievement so far has been the fathering and co-parenting of his daughter, a uniquely exceptional young lady who has inherited her father's brilliance and her mother's more outgoing personality. Up until his incarceration a year ago, and in spite of their divorce, my brother remained a loving involved father, as well as a supportive and active partner in the co- raising of his child and would continue to be so from a distance, had the state court not forbidden contact with her. It is my greatest fear, Your Honor, that this truly remarkable and extraordinary young woman will carry an unbearable legacy if her father is not given the opportunity to overcome this situation and redeem himself, which I am fully convinced he would do.

In the hours and days following the news of my brother's arrest, I began to receive information about him and from him which although sometimes painful to hear and difficult to process, began to dispel my confusion and deep conflict. With great remorse and sincere apology, and without excuse or defensiveness, Ken accepted both the responsibility for his indiscretions and the inevitability of serious consequence. Although my husband's illness prevented me from visiting my brother, through correspondence and other communication with him and others, I have conclusively settled one of the most difficult questions I had faced since his arrest—was he who I thought he was? The unequivocal answer, Your Honor, is yes! Despite the troubling yet isolated circumstances which precipitated his incarceration, and despite my personal and unyielding abhorrence of pornography in any form, any age, illegal or not, I am convinced without waver that my brother was and *still is* the kind, loving, brilliant, wonderful man, brother, son, father, friend and scientist, that I and others have *always* known him to be.

My husband died only a few weeks ago, Your Honor, and our family's grief, particularly mine, has been compounded by the absence of my brother, not just when we gathered together as a family unit for my husband's service but throughout the extraordinarily difficult and painful last year of my husband's life. On a Saturday morning shortly after the funeral, I sat alone in our living room and mindlessly scrolled through the preview channel of our satellite-fed television, in hopes of finding even a momentary distraction from my overwhelming grief. Before I realized it I had flipped through network and cable channels, passed through movie offerings and inadvertently landed in the pay per view "adult entertainment" listings, where a program title startled me into focus: Teens with Tight Holes.

I was stunned, Your Honor. I thought of my brother who has been confined to a county jail for a year without bond or sentencing because he received and viewed illicit images of teenagers. And yet here I discovered sexually explicit material also involving teenagers, offensively graphic in the mere titles, legally produced, apparently, marketed in a manner which blatantly targets those who "like them young," distributed and available not just to the masses but here in my own living room! It sickened me to the point of nausea.

So as not to risk further offense to you or others who may read this, I have enclosed a separate page containing a list of program titles and their descriptions that I found that morning within the same set of viewing options that included Saturday morning cartoons. If you choose to, I ask that you refer to that list before continuing here.

Having worked at both a college video production studio and later a local television station, I am acutely aware of the host of individual participants needed in order to produce and distribute, not just this, but any type of material, legal, illegal, sexually explicit or not, that is made available for viewing. Necessary participants include but are not limited to the producers who fund them, photographers, videographers, film and sound editors, writers who title and describe them, marketers, distributors, satellite, cable and television executives, and their lawyers, who make the decisions to acquire and peddle this decidedly despicable material for financial gain—legally. In addition, there are the actual participants and perpetrators of sexually provocative and/or explicit acts with and upon teenagers, acts which by sole virtue of a participant's 18th birthday no longer become classified or punishable as child pornography.

My brother did none of those things. He looked at pictures—pictures which personally offend my Christian values but are nonetheless only pictures. In the privacy of his own home, with no physical contact or participation in any acts with or against teenagers or children, he looked at pictures—as did every participant in the production and distribution of the grossly offensive pay per view titles I have

enclosed. Had my brother simply paid a satellite or cable company a fee to view similar material to that which was found in his possession, none of this tragedy would have taken place. His unblemished character would not have been questioned much less excruciatingly defamed. His invaluable contributions to the State of Florida and the field of science would be on going. His irreplaceable participation in his daughter's life would not have been brutally and painfully interrupted. His long term support and participation in the care of our 85 year old mother, would not just have continued, but would have increased in light of her advancing health issues. My husband, whose relationship with Ken was one of mutual love and respect, would have had the presence, support and entertaining wit of his brother-in-law in the final days of his life. My sisters, my family and I would have available to us the person whom my heart and mind still knows as my amazing big brother, during what is without question the most difficult time of my life. My husband cannot come back, but my brother can. It is not too late.

As a society we seem reluctant to admit it, particularly in crimes against our children, but the fact is, there _are_ ranges of perpetration and degrees of victimization, even those of a sexual nature. Recognizing those ranges and penalizing appropriate to the degree seems an unimaginably difficult task, especially in such a socially, politically and emotionally charged area as child pornography. But we have to try. Our views have become skewed, and our laws have followed suit, resulting in harsher sentences for those who view illicit images than for those who perpetrate unspeakable acts of physical and sexual violence against our innocents. We have to try, Your Honor, we have to try.

If it is not within the parameters of federal law to release my brother, I urge you....I beg you, to please minimize his sentence, so that he and we may prepare and remain hopeful for his and our future. And if it is within your jurisdiction, please assign him to a facility where his potential for further contributions will not be wasted or lost.

Sincerely yours,

Kelli Stewart

DirecTv  Pay Per View Listings

Babysitter Playtime 7
Cute young girls deserve a big tip for playing with your rod.

Teens Get Tamed
Hot sluts-in-training get a hard-core workout from huge poles.

Barely Legal 130: Trouble Makers
They're back and they'll make you pop with excitement! A fresh, new collection of hot, young and slutty chicks.

Moms Bang Teen Couples
Horny MILFs assert their lewd desires on younger couples and teach them a lesson in hardcore.

Teen 18 All-Stars
Young sluts tempt you with hot bodies and dirty desires.

Almost Too Young
Don't worry, we checked IDs for these 18-year-old sluts.

Teens in Tight Jeans
Hot chicks in denim let you get into their pants.

Young and Busty Teens
Super hot busty teens that love to have sex on camera.

Black Teen Newcomers
Nasty harlots satisfy your craving for hot, black-on-black action!

Teen Casting Couch
To these novice nymphos more couch time means more show time.

Kendon T. Barretta
108 View Street No. 2
Black Mountain, NC 28711

29ᵗʰ of August, 2012

The Honorable Kenneth Ryskamp
Federal Courthouse
701 Clematis Street
West Palm Beach, Florida 33401

   Re: United States of America vs. William Kenneth Stewart
     Case No. 11-80177CR Ryskamp/Hopkins

Judge Ryskamp:

   I am writing to you regarding my uncle, Kenneth Stewart, who is soon to come before you to be sentenced for the crime of receipt and possession of child pornography.

   It is difficult to relate the depth of the shock we felt when our family learned of Ken's arrest, or the dismay when we learned that there could be, and would be, no contest to the charges. The gravity of his offense has not escaped us, and now a terrible responsibility is laid on the Court. I understand that as you deliberate over the appropriate sentence, you will be considering not only the punishment for violating the law of the land, but what will be in the best interest of protecting the citizens of the state, and how he may best be rehabilitated so that he can be assured of doing himself and the country no greater injury. There can be no overestimation of the importance of your duty.

   I feel, however, that it is my personal duty to plead for some mitigation of his sentence. Justice can and, I have every confidence, will be served, but I hope that even in these damning circumstances you may find space for mercy and redemption.

   I have known Ken for all twenty-seven years of my life. In that time, he has been a beloved and trusted member of our family. His quiet exterior conceals a dry wit, a doting love for his child, and great warmth for family and friends, and an incisive intellect. It is this intelligence which has brought him accolades and accomplishment throughout the academic and professional community. He has always been a kind and generous man, and I have never heard him raise his voice in anger; he is so inimical to conflict that he would rather not be in the room than be aggressive or enraged. I have many fond memories of our conversations when I was young, when he encouraged me in my educational pursuits, and a great measure of credit is due to him that I will be pursuing a doctorate in order to have my own successes in academia.

I have no doubts that Ken regrets this sin. Not only because his life, as he knew it, has been damaged beyond hope of repair: his career ruined, his finances laid waste, and his relationships outside of his family shattered. I know that he regrets the pain and suffering he has caused us, but I also know that he regrets the damage he has done to his own spirit. There are sins we commit which damage the soul, and his grief is no doubt partly this injury, which he alone can repair.

I hope you will believe me when I say that it is not in his nature to harm someone else. That he could have ever taken whatever fantasy was created by this pornography and molested a child would be a great leap of illogic. I am sure you are aware that this pornography cannot be linked to a propensity for actions against a child, and so I will not belabor the point. I will only suggest that Ken most needs rehabilitation and therapy. The state need not lock Ken away for the rest of his life to assure itself that he will present no danger to children. I believe that with the support of his family, he will be able to return to society a changed and better man, who will never again break the law in such a way.

Although his life has already been torn asunder by what he has done, we of his family, and he himself, are ready to put the pieces back together in a new way, a way that will yield a better man. I have confidence that the facts of who he is beyond the crime will be clear. He can yet do good works. I ask only that you consider mercy.

Respectfully,

Kendon T. Barretta

Kerry S. Barretta
108 View Street # 2
Black Mountain, NC 28711

August 27, 2012

Honorable Kenneth Ryskamp
Federal Courthouse
701 Clematis Street
West Palm Beach, FL 33401

Re: United States of America vs. William Kenneth Stewart
    Case No. 11-80177CR RYSKAMP/HOPKINS

Dear Judge Ryskamp,

My brother, Ken, is to appear before you on a charge of receipt and possession of child pornography, a charge to which he has entered a plea of guilty. I understand that this act does not indicate any child contact, nonetheless, this is a very serious matter about which I am concerned. I was stunned by the charge and his plea. Despite this, I love and appreciate my brother and know that this misstep does not define his life although the consequences will be extremely far reaching for him.

I have long respected my brother's good relationship with his daughter and I have personally observed his love and devotion as a parent. His amicable relationship with his former wife has enabled them both to contribute to her upbringing and to participate together in the everyday events as well as the milestones of her life although separated by many miles. Through his foresight, planning and desire that I, my siblings, our mother, and other family members remain a part of his daughter's life despite the geographical distances between us, we have had the pleasure of enjoying the company of our niece and my brother on many occasions and observing his good parenting firsthand.

My brother is a bright and talented man, esteemed in the scientific community with many accomplishments of which to be proud. Undoubtedly, you are familiar with the discovery of the underwater location of the Titanic and the exploratory missions conducted by Woods Hole Oceanographic Institution where my brother was employed. My brother was part of the team which discovered and explored the ship. He was one of the three team members on the two-mile, free-fall dive in the deep submergence vehicle, Alvin, to place the memorial marker at the shipwreck site. Equipment which he helped develop while earning his doctorate at MIT, the Jason Jr., was used to explore the ship. His work in sonar mapping has produced remarkable images in other underwater explorations.

My brother is a kind and thoughtful person, and although generally a quiet soul, has a keen sense of humor. He is responsible, productive, talented and intelligent. He is loved by all of his siblings and we miss him very much.

Page **1** of **5**

This is a difficult letter to write. As an individual who respects and believes in upholding the law, I find myself struggling with the concepts of justice and mercy and rehabilitation and what place they have together in our criminal justice system. I admit, I haven't thought much about this before; however, with a close member of my own family jailed for a very serious charge, it has brought many questions to the forefront of my mind. Knowing my brother as I do—as a good man, a good father, a respected scientist, a veteran who served his country, and a man with no prior criminal record—my heart aches for him and for others like him who find themselves caught on the wrong side of the law, charged with a very serious first offense carrying harsh sentencing guidelines. I know that he and others like him are optimal candidates for reintegration and restoration to society and yet, for many, that will not be.

The current debate about mandatory sentencing guidelines, particularly in the area of pornography offenses, highlights many of my own concerns. In the area of child pornography, the trend has been to create new offenses and increase penalties so that over the last dozen years or so, sentence lengths are now 5 times what they were. And the increase in sentencing does not seem to promote public safety, deterrence or rehabilitation. Some possession offenders actually receive harsher sentences than offenders who physically abuse children. Our efforts should be stronger in convicting and punishing the latter and our sentences should reflect the distinction. I speak from personal experience,  as a foster parent for a girl who was removed from her home at 13 because her stepfather continued to sexually molest her. Her stepfather remained at home with several other young children while social services and her mother promoted a solution that punished the child by removing her from her home, not the father.

I am sure that you are aware of and have access to many research articles centered on this debate. I do not wish to insult you by arguing a case about the inequities in current sentencing guidelines and trends for child pornography offenders. I include some highlights at the close of this letter which bring attention to some of the issues. I only ask that you look through them on the small chance that some thought may be new and insightful to you. A particularly thorough and informative article was written by Troy Stabenow, Prosecutor, which I highly recommend and have referenced.

I understand that society is often best served by incarcerating those who have broken the law and that there are individuals who must be confined. They lack remorse; their consciences are seared; they may not be able to recognize right from wrong or are indifferent to the distinction; and they do not have the determination and will to exercise the restraint required to refrain from criminal acts. I do not believe my brother is one of them. I believe he sincerely regrets the action which has caused him to appear before you and that his remorse is genuine. He understands and has accepted responsibility for what he has done and for the consequences which it brings. I have no reservations about returning him to society now or in the future. I believe that if he is allowed to resume some semblance of life in society, through monitoring, supervision and counseling, that his life will not be wasted in jail at a far greater cost and burden to society.

As parents, we try to model our discipline to fit both the offense and the temperament of the child. One child withers under a warning look and another is defiant until the harshest discipline is applied. Our goal is to apply consequences that result in correction and restraint of any further offense, not to

possible—to determine what punishment will prevent a further offense and yet will return a productive, self-sufficient and law-abiding person to society where he/she can contribute to rather than drain our public resources. I understand the difficulty inherent in trying to uphold laws and sentencing guidelines and protect the public while still promoting restoration and applying mercy when appropriate. You have a tremendous task upon your shoulders, and I do not envy your role, but appreciate your service to the public.

My brother has already suffered great punishment: he has lost his job with no possibility of regaining it; he has lost his standing and reputation in the scientific community with dire consequences for finding work in the future; he has expended his meager life savings to meet the immediate and future needs of his daughter whom he can no longer support on a regular basis; he has missed this last year of sharing in her life and supporting and encouraging her in her endeavors and accomplishments; he will carry the label of sex offender wherever he goes and will suffer shame and scorn and possible retribution outside of the law because of it. He was afforded no opportunity to close up his home or settle his financial affairs or say goodbye to his loved ones although he had been granted and had raised bail only to have it summarily rescinded. He has spent 12 months in jail—waiting, with no option but to continue waiting. The grave consequences of his actions will follow him for the rest of his life. It will always be difficult, if not impossible, to find a job in his field; he will never be able to make up the financial loss; he will never recover the time spent behind bars; he may never find an accepting community in which to live quietly and put down roots; and the shame and humiliation associated with his action will be ever present. For some, these losses would be inconsequential. For my brother, they are substantial and, I believe, sufficient punishment in and of themselves.

Your Honor, you may be the last person with the opportunity to look beyond the mere letter of the law but to the person who will stand before you, my brother. You have the ability to search for the right measures to apply in his case so that justice will be satisfied and so that mercy may achieve what punishment alone cannot. I ask, respectfully, that as you consider this case that you will consider sentencing my brother to the shortest incarceration possible and allow him to have a chance to redeem himself and be restored to his family and society to once again lead a purposeful and productive life.

I am prepared to offer whatever I can. My home, though small, is open to him. My support, my encouragement, my commitment remain steadfast.

I appreciate your consideration of my thoughts and request. Thank you.

Sincerely,

Kerry Berretta

Sister

Case 9:11-cr-80177-KLR   Document 46   Entered on FLSD Docket 09/05/2012   Page 25 of 26

A majority of Federal judges who were respondents to a survey conducted by the U.S. Sentencing Commission believe that many child pornography sentences are too long—71% believed the mandatory minimum for receipt of child pornography was too high; 70% believed that the guideline ranges for possession were too high; 69% believed that sentences for receipt were excessive. (US SENTENCING COMMISSION, RESULT OF SURVEY OF UNITED STATES DISTRICT JUDGES, JANUARY 2010 THROUGH MARCH 2010, *available at*

http://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf)

"Possessors of child pornography are modern-day untouchables…because we cannot imagine that we know someone so perverted, we are not bothered by the idea that these men are cast out to serve long periods in prison…Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers. The resulting punishment may be more a reflection of our visceral reaction to these images than a considered judgment of the appropriate sentence for the individual." Judge, United States vs. Cruikshank, 667 F. Supp, 2d 697,703 (S.D.W. Va. 2009).

"The empirical literature does not put forward any evidence that consumers of child pornography pose a considerably increased risk for perpetrating hands-on sex offenses…Though some consumers do commit hands-on sex offenses as well, the majority of child pornography users do not." Jerome Endrass et al., *The Consumption of Internet Child Pornography and Violent Sex Offending*, 9 BMC PSYCHIATRY 1–7 (2009), *available at* http://www.biomedcentral.com/1471-244X/9/43.

There have not been conclusive studies that demonstrate a causative link between viewing or possessing child pornography and offenses against children. (Melissa Hamilton, *The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?*, 22 STANFORD L. & POL'Y REV. 545, 580, 584 [2011]) Sentencing child pornography offenders to harsher sentences than those who have actually committed contact offenses against children is not based on sound evidence and is not effective in promoting public safety.

Sentencing guidelines for child pornography crimes "do not appear to be based on any sort of [science] and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses." (Robert W. Pratt, U.S. district judge, Des Moines, Iowa in an article by Anir Efrati, *Making Punishments Fit the Most Offensive Crimes,* WALL STREET JOURNAL, Oct. 23, 2008)

The Butner study, a 2000 Federal Bureau of prisons study, which has to a certain extent fueled the erroneous belief that pornography viewing drives contact abuse, has been questioned as to its conclusions and flawed methodology. Its own author reports its misuse, "Some individuals have misused the results of Hernandez (2000) and Bourke and Hernandez (2009) to fuel the argument that the majority of child pornography offenders are indeed contact sexual offenders and, therefore, dangerous predators. This simply is not supported by scientific evidence." (Andres E. Hernandez, *Psychological and Behavior Characteristics of Child Pornography Offenders in Treatment,* the University of North Carolina, Chapel Hill, April 5-7, 2009, available at

http://www.iprc.unc.edu/G8/Hernandez_position_paper_Global_Symposium.pdf)

Page **4** of **5**

"First, the researchers tested the concern that 'accessibility of online CP [Child Pornography] has caused increases in child sexual abuse' and that 'CP may trigger sexual abuse by activating and validating sexual urges in CP viewers.' In contrast to predictions, Wolak, Finkelhor, and Mitchell found that no matter which source of data they used, 'rates of child sexual abuse declined substantially since the mid-1990s, a time that corresponds to the spread of CP online…there has not been a spike in the rate of child sexual abuse that corresponds with the apparent expansion of online CP.' Of course, some offenders may have viewed child pornography and then progressed to molesting children. However, if the next step hypothesis was generally valid, then a proliferation of readily available child pornography should have translated into similar growth, not reduction, of contact offenses, particularly as U.S. society has become ever more attuned to discovering and investigating abuse. That was not the case." (Troy Stebenow [Prosecutor], *A Method for Careful Study: A proposal for Reforming the Child Pornography Guidelines,* FEDERAL SENTENCING REPORTER, Vol. 24, No. 2, December 2011, *available at* http://www.jstor.org/stable10.1525/fsr.2011.24.2.108)

"I am familiar with 5 black-market models in which prosecutors use these dynamics to force defendants to accept irregularly structured §2G2.2 sentences…All of these systems allow prosecutors, starting with similar fact sets, which should result in the same guideline range if charged similarly, to manipulate and generate so-called guideline sentences of vastly different lengths. In effect, the prosecutor becomes the primary sentencing authority…Collectively these practices validate the concern, first expressed by the Sentencing Commission in a 1991 letter to Congress, that treating receipt as more severe than possession is illogical and leads to sentencing manipulation." (Troy Stebenow [Prosecutor], *A Method for Careful Study: A proposal for Reforming the Child Pornography Guidelines,* FEDERAL SENTENCING REPORTER, Vol. 24, No. 2, December 2011, *available at* http://www.jstor.org/stable10.1525/fsr.2011.24.2.108)

"The Guidelines have become ever more punitive in spite of their application to a current population that seems less dangerous than the population from the early 1990s…Quantitative data suggest that judges are concerned about the proportionality of applying the guidelines to CPOs (Stabenow, 2011; Wollert, Waggoner, & Smith, in press). As Senator Arlen Specter has observed, "each year the federal judges 'departure rate for child pornography increases significantly' (Specter & Hoffa, 2011, September)… Case-specific decisions reflect similar concerns (Hansen, July 1, 2009). A New York Times article, for example, (Sulzberger, May 21, 2010) recounted a decision by the U.S. Court of Appeals for the Second Circuit (United States of America v. Dorvee, 2010) that was highly critical of the section of the Guidelines (§2G2.2) that covers possession and distribution cases. As a result the court 'vacated a 20-year child pornography sentence by ruling that the sentencing Guidelines … unless applied with great care, can lead to unreasonable sentences.'" (Richard Wollert, Ph.D., Psychology Department, Washington State University Vancouver, *The Implications of Recidivism Research and Clinical Experience For Assessing and Treating Federal Child Pornography Offenders: Written Testimony Presented to the U.S. Sentencing Commission,* February 15, 2012, Washington, D.C.